JoNes, Senior Judge,
dissenting in part:
I agree with the first part of the Per Curiam opinion, but the second raises a novel question that apparently has never been specifically decided. It is a matter of great importance and I feel that it should be fully briefed by the parties before a final conclusion is reached.[1]
The case of Riggs National Bank v. Holtman, 221 F. Supp. 599 (D.C. 1963), which has become final, definitely holds that the surplus income accumulated since 1957 was not disposed of by the will and will definitely go to decedent’s daughter rather than to the four charities named. Therefore, since such surplus income was not permanently set aside for charitable purposes, plaintiff is not entitled to recover any fiduciary income taxes paid upon such surplus income accumulated after 1957.
However, that decision does not touch the question of any income between 1951 and 1957. It, by the terms of the will, might be diverted to the payment of any 'borrowings made necessary in managing the estate. At the time the will was made it was not known that any borrowing would be necessary but if such borrowing became necessary then a portion of the rental income would be applied to the liquidation of such borrowing.[2]
*485 It thus becomes apparent that the diverting of the accumulating income during 1951 to 1957 to the liquidation of the $60,000 actually borrowed enhanced to that amount the net value of that portion of the final estate that will go to charity after payment of the stipulated legacies. In other words, had no borrowing been necessary the $60,000 which was paid out of rental income to liquidate that amount of borrowing would have gone in its entirety under the Riggs National Bank decision to the sole heir and would thus have reduced by that exact sum the amount that will ultimately be applied to the charitable bequests. The net amount that will finally go to the four charities was thus increased by the $60,000 or rather the amount was not decreased by $60,000 by virtue of the fact that that amount was diverted from what would have otherwise been intestate. If the surplus income had not been used to reduce the mortgage indebtedness, then, upon sale of the trust property in 1970, plaintiff would have been required to deduct the amount of the mortgage loan from the amount distributed to the four charities.
It is undisputed that the trustee under the will was required to pay fiduciary income taxes upon the income produced during the years 1951 to 1957, inclusive. It is also very apparent under the Riggs National Bank decision that the $60,000 actually borrowed for the preservation and management of the estate was the only part of the accumulated income, except the specific annuities, that was disposed of by the will and that only on a contingent basis; that is to liquidate any borrowing necessary for the preservation and management of the estate.
There seems little doubt that the ultimate value of that part of the estate going to charity was increased by $60,000. It was not and could not have been known at the time what amount, if any, would be thus diverted.
Section 162 of the Internal Revenue Code of 1939, as amended, reads as follows:
Sec. 162. Net iNcome.
The net income of the estate or trust shall he computed in the same manner and on the same basis as in the case of an individual, except that—
(a) There shall be allowed as a deduction * * * any part of the gross income, without limitation, which pur *486 suant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for [charitable] * purposes * * or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, * * *. [Emphasis added.]
The income of the estate during the years 1951 to 1957 was subject to a fiduciary income tax which was paid during each of those years. Plaintiff insists that it is entitled to a charitable deduction on the fiduciary income taxes paid upon the surplus income of the trust during the years 1951 through 1957, inclusive, which was paid to reduce the indebtedness of the trust estate since all of the income of the trust during those years, except the annuities, was to be set aside for charitable purposes pursuant to the terms of the Justh will.
Practically no briefing has been done by the defendant on the particular issue now before the court. A number of cases have been cited by the plaintiff in a brief comment. The facts in the case of J. B. Whitehead Estate, 3 T.C. 40 (1944) (affirmed Commissioner v. Citizens & Southern National Bank, 147 F. 2d 977 (5th Cir. 1945)), are very similar to those in the pending case. The plaintiff was permitted to recover in that case. Cited also are Rockland Oil Co., 22 T.C. 1307 (1954); Arthur Jordan Foundation v. Commissioner, 210 F. 2d 885 (7th Cir. 1954); also Leon A. Beeghly Fund, 35 T.C. 490 (1960); United States v. Bank of America National Trust & Savings Assn., 326 F. 2d 51 (9th Cir. 1963). See also Commissioner v. Burrow, 333 F. 2d 66 (10th Cir. 1964).
As was stated in Helvering v. Bliss, 293 U.S. 144, 150-151 (1934):
The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer’s favor, were begotten from motives of public policy, and are not to be narrowly construed.
See also Old Colony Trust Co. v. Commissioner, 301 U.S. 379 (1937) and Edwards v. Slocum, 264 U.S. 61 (1924).
In these circumstances I think that both parties should be requested to thoroughly brief the new issue before the court reaches a final conclusion.
*487 Since tlie court has now decided not to request the parties to file detailed briefs, I respectfully dissent from the second part of the Per Curiam opinion.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner W. Ney Evans, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, a national banking association, is successor by consolidation to the Washington Loan and Trust Company, executor and trustee under the-will of Joseph S. Justh, who died May 12,1950.
2. (a) Decedent’s last will and testament was executed on June TO, 1946. A codicil thereto was executed on May 22, 1947. The text of the will is set forth in finding 10.[1]
(b) The said will and codicil were admitted to probate on April 25, 1951, in the United States District Court for the District of Columbia (holding a probate court), following the dismissal of a caveat suit filed by relatives of the decedent.[2]
3. As of the date of his death, decedent owned (a) personal'property, consisting of $4,021.51 in United States Savings Bonds and accrued interest thereon, $18,407.08 in savings and checking accounts, and jewelry appraised at $5.75,[3] and (b) real estate (land and building), comprising the premises at 1801 F Street, northwest, Washington, D.C., appraised at a total value of $325,000.[4]
4. (a) Decedent’s will contained six paragraphs between the testamentary clause and the signature clause. The first paragraph directed the payment of his “just debts, funeral expenses, and the costs of the administration” as soon after his death “as may be practicable.” The sixth paragraph named the Washington Loan and Trust Company as executor of the will.
*488 (b) The second paragraph of the will devised the real estate to the Washington Loan and Trust Company in trust “for a period of twenty years * * * and no longer.” The trustee was directed “to take possession * * *, collect the rents * * *, and after deducting all proper expenses * * *” to make payments from the net income to seven named persons in stated amounts each month. If the net income derived from the property should prove insufficient to make the designated monthly payments in full, the trustee was directed to make the specified payment to decedent’s, daughter and her children, and to reduce the remaining monthly payments proportionately “to such extent as may be necessary.”
(c) The third paragraph of the will gave to the trustee “full power and authority” to manage and control the real estate, except that no lease was to be made by the trustee which would extend more than 20 years after decedent’s death.
(d) The fourth paragraph of the will directed the trustee, upon termination of the trust, to sell the real estate and from the net proceeds of the sale to pay 12 specific bequests, totaling $277,000, the remainder of such proceeds to be divided into four equal shares, payable to four named charitable organizations. In the event the net proceeds of the sale' should prove insufficient to pay the specific bequests in full',, “said payments shall be proportionately reduced to such an extent as may be necessary.”
(e) Following is the full text of the fifth paragraph of the will, containing the residuary clause:
Fifth: All the rest, residue and remainder of' my estate, real, personal and mixed, wheresoever situate-, of which I may die seized and possessed, I direct my Executor to convert into cash as soon after my death as may be advantageous. Out of the proceeds, or any cash left by me, I direct the payment of the expenses of administration, debts and all other charges, such as- estate, succession and inheritance taxes.
In the event said rest, residue and remainder shall be* insufficient to pay such charges, then I authorize my said Trustee to borrow such sum as may be necessary to pay the same and to secure its repayment by a deed of trust or mortgage upon the real estate hereinbefore described *489 and to repay the same as rapidly as possible from the net rents derived therefrom over and above the annuities hereinbefore set out.
In the event that during the period of this trust the net rents received from said property shall be more than sufficient to pay said annuities, plus the interest and curtails on said loan, I direct that such surplus shall be retained in the hands of my Trustee until the termination of the trust, or unless the annual rental should thereafter be insufficient to pay the annuities.
Should said annual rentals be insufficient to pay said annuities, then to such extent as said rents may be insufficient, said Trustee is directed to use any accumulated net rents in its hands for the purpose of paying said annuities in full.
(f) The codicil revoked the annuity ($50 per month) and the bequest upon termination of the trust ($15,000) payable to Bose Addie Schaeffer. As a consequence of the codicil, the monthly payments required by the will were reduced to $525 ($6,300 per year) from the original total of $575 ($6,900 per year); and the total of specific bequests payable upon termination of the trust was reduced to $277,000 from the original total of $292,000.
5. (a) At the time decedent executed his will, the real estate (which became the trust property) was under lease for a gross rental of $16,000 per year,[5] the lease to expire on July 31, 1952. After decedent’s death, plaintiff leased the premises to another lessee for a 10-year period beginning on August 1, 1952, on more favorable terms. Under the second lease the lessee committed itself to the payment of (1) a fixed annual rental of $23,940; (2) real estate taxes levied against the property; (3) insurance premiums covering protection from loss by fire and other hazards; and (4) a sum equal to 6 percent of gross sales in the premises in excess of $510,000 and up to $700,000, and 5 percent of gross sales over $700,000.
(b) At the time of decedent’s death his will provided for monthly payments to named beneficiaries of $525, or $6,300 per year.[6] On September 1, 1953, one of .the annuitant- *490 legatees (Rosa Risdon) died, whereupon the total monthly payments were reduced by $100 to $425, or $5,100 per year. All other beneficiaries under the will are still living.
6. (a) Pending the disposition of the caveat suit, plaintiff made no payments of the amounts due monthly to the individual beneficiaries under decedent’s will, although amounts were regularly set aside for the purpose.
(b) By August 1, 1951, it appeared that the necessary expenses of administration, taxes, and debts of the estate would total approximately $78,000. On that date, plaintiff borrowed $60,000 with which to pay such expenses, agreeing to repay the loan, with interest at 4 percent per annum, by August 1,1956. This loan was secured by the trust property and was payable out of the income derived therefrom.
(c) On August 3, 1951, plaintiff, as trustee, began making annuity payments to the individual beneficiaries, and has since continued them. These payments have been as follows:

(d)On August 1,1956, an extension of 5 years was made on the unpaid portion of the loan, with interest at 4% percent per annum. The final payment on the loan was made on October 24, 1957. By years, these payments were as follows :

(e)From the date of decedent’s death until August 1, 1951, the surplus income of the trust was used to pay expenses of the administration of the estate and litigation expenses incurred in connection with the caveat suit: Thereafter, until October 24,1957, all of the surplus income of the *491 trust was used to repay the $60,000 loan. Since that time the surplus income of the trust has been retained by the trustee and invested in United States Government obligations and common trust funds.
(f) Plaintiff, as executor, paid, in August 1951, a federal estate tax of $51,058.66 on the estate. In computing this tax, plaintiff sought and was allowed a charitable deduction of $49,485.72.
7. (a) On the fiduciary income tax returns filed by plaintiff for the years 1951 to 1960, inclusive, as trustee under decedent’s will, the following amounts have been shown as (1) net income subject to tax[7] and (2) tax payable: The taxes have been paid.

(b) Claims for the refund of all of the income taxes paid by plaintiff as trustee under decedent’s will, as listed above, were timely filed with the District Director of Internal Revenue at Baltimore, Maryland.[8] All of the said Claims for refund have been disallowed. The present suit was timely filed.
8. (a) Following is a resume of the directions in decedent’s will for monthly payments, together with some identi *492 fication of the beneficiaries now living and of the prospect of payments lapsing before termination of tbe trust.
(1) $175 to Mrs. Charlotte S. Brown, daughter of decedent. Mrs. Brown was born October 28, 1906. “On her death the said sum shall be paid to her two children in equal shares and to the issue of either of them who may then be deceased or who may thereafter die.” Mrs. Brown and her two daughters are now living. The possibility of these payments lapsing before May 12, 1970, is remote.
(2) $40 to Elmer S. Justh, nephew of decedent. Mr. Justh was born December 21, 1905. “Upon his death the said sum * * * shall be paid to his widow, if living.” Jeanette Justh, wife of Elmer S. Justh, is now living. She was bom May 14, 1902. “Upon her death said sum * * * shall be paid to his issue, per stirpes.” The three children of Elmer and Jeanette Justh who survived decedent are now living. The possibility of these payments lapsing before May 12,1970, is remote.
(3) $60 to Jeanette Justh, wife of Elmer Justh, and upon her death to her issue, per stirpes. The possibility of these payments lapsing before May 12,1970, is remote.
(4) $100 to Lydia C. Nevitt, niece of decedent, born October 29, 1903. “Upon her death the said sum shall be paid to her issue, per stirpes.” The possibility of these payments lapsing before May 12,1970, is remote.
(5) $50 to Gertrude Justh, niece by marriage, bom August 23, 1895. There is no provision for payment upon her death and there is some possibility of payments lapsing before May 12,1970.
(b) The annuities summarized in the preceding subdivision of this finding account for the payments of $425 per month, or $5,100 per year, as listed in finding 6(c). There is some possibility of the amount being reduced, before May 12, 1970, by $50 per month or $600 per year, leaving the estate obligated for payments totaling $4,500 per year. The possibility of payments being reduced below $4,500 per year is remote.
(c) Following is a resume of the directions in decedent’s will for the payment of specific bequests upon termination of the trust, together with some identification of the legatees *493 and of the prospect of legacies lapsing before becoming due and payable.[9]
(1) $55,000 to Mrs. Brown, decedent’s daughter, “if living, and if dead then to her issue per stirpes.” The possibility -of lapse is remote.
(2) $10,000 to each of Mrs. Brown’s daughters, Joan and Diane. Either or both of these bequests would lapse in the event of the death of either or both legatees before May 12, 1970.
(3) $25,000 to Elmer S. Justh, decedent’s nephew, “if living, and if dead then to his widow and children in equal shares and to the survivor or survivors of them, the issue of ■any deceased child to take the share to which said child would have been entitled if living, per stirpes.” The possibility of lapse is remote.
(4) $25,000 to Jeanette Justh, wife of Elmer, “if living, and if dead then to her children * * as in the preceding bequest. The possibility of lapse is remote.
(5) $5,000 to each of the children of Elmer S. Justh, “the issue of any of them who may then be deceased to take the share to which the deceased child would have been entitled if living, per stirpes.” Two of the three Justh daughters are married, and the youngest is now only 20 years of age. The possibility of lapse is remote.
(6) $75,000 to Lydia C. Nevitt, “if living, and if dead then to her issue, per stirpes.” The possibility of lapse is remote.
(7) $10,000 to Adele Smith, niece of decedent. This is •one of five bequests subject to lapse in the event of the failure of the legatee to survive the termination of the trust.
(8) $15,000 to Harold Justh, great-nephew of decedent, ■“if living, and if dead then to his issue, per stirpes.” The possibility of lapse is remote.
(9) $15,000 to Gertrude Justh, niece by marriage, “if living.” Gertrude Justh was bom on August 23, 1895. •Some possibility of lapse.
*494 (10) $20,000 to Rosa Risdon, half sister of decedent, “if living.” This legatee died in 1953.
(11) $2,000 to Shirley Bohn, friend of decedent, “if living.” This is the fifth bequest to legatees now living that is subject to lapse in the event the legatee dies before May 12, 1970. The other four such bequests are: (i) Joan Brown, $10,000; (ii) Diane Brown, $10,000; (iii) Adele Smith, $10,000; and (iv) Gertrude Justh, $15,000. Except for the last named, the possibility of lapse is remote.
(d) At the time of decedent’s death, his will provided for specific bequests upon termination of the trust in the amount of $277,000. The death of Rosa Risdon in 1953 reduced this amount to $257,000. By May 12, 1970, the amount may be further reduced; as indicated in subdivision (c) (11) of this finding. The trustee is required by the will to anticipate the payment of $257,000 in specific bequests, subject to the possibility of some reduction by lapse. The possibility of reduction of the amount below $242,000 is remote.
9. (a) The fair market value of the trust property (real estate) at the present time is approximately $325,000.
(b) Each of the four organizations named in paragraph 4 of the will to receive one-fourth of the remainder of the proceeds of the sale of the real estate was and is a charitable organization within the meaning of the internal revenue laws of the United States.[10]
(c) As of the present time, the probability is that, upon termination of the trust, the sale of the real estate will yield proceeds sufficient to satisfy all of the specific bequests and to provide some remainder for distribution to the designated charitable organizations.
(d) As of the present time, the probability is that, by May 12, 1970, when the trust terminates, there will be in the hands of the trustee a substantial accumulation of funds derived from income surplus to the requisite monthly payments to beneficiaries under decedent’s will.
*495 10. Following is the text of decedent’s will:
I, Joseph S. Justh, of the City of Washington, District of Columbia, being of sound and disposing mind, memory and understanding, do make, publish and declare this to be my last Will and Testament, hereby revoking all testamentary dispositions by me at any time heretofore made.
First: I direct the payment' of my just debts, funeral expenses and the costs of the. administration as soon after my death as may be practicable.
Second: I give and devise, in fee simple, the real estate owned by me at the northwest corner of Thirteenth and F Streets, Northwest, known as Lot 800 in Square 253, improved, by premises, 1301 F Street, Northwest, in the District of Columbia, to The Washington Loan and Trust Company, a banking corporation of the District of Columbia, in and upon the following uses and trusts:
To take possession of the same, collect the rents, revenues and income therefrom, manage the same and after deducting all proper expenses incident thereto they shall pay and turn over the net income arising therefrom as follows:
To Mrs. Charlotte S. Brown, of Louisville, Kentucky, the sum of One Hundred Seventy-five Dollars ($175.00) per month. On her death the said sum shall be paid to her two children in equal shares and to the issue of either of them who may then be deceased or who may thereafter die.
To my nephew Elmer.S.' Justh, of Washington, D.C., the sum of Forty Dollars ($40.00) per month. Upon his death said sum of $40.00 shall be paid to his widow, if living. Upon her death said sum of $40.00 shall be paid to his issue, per stirpes.
To Jeanette Justh, wife of my nephew Elmer Justh, the sum of Sixty Dollars ($60.00) per month. Upon her death said sum of $60.00 shall be. paid to her issue, per stirpes.
To my niece, Lydia C. Nevitt, of Washington, D.C., the sum of ".One Hundred Dollars ($100.00) per month. Upon her death the said sum shall be paid to her issue, per stirpes.
To my niece by marriage, "Gertrude Justh, of Baltimore, Maryland, the sum of Fifty-Dollars ($50.00) per month.
To Bose Addie Schaeffer, of Danville, Virginia, the sum of Fifty Dollars ($50.00) per month. .
*496 To Rosa Risdon, of Washington, D.C., the sum of One Hundred Dollars ($100.00) per month.
In the event the net income derived from said property shall be insufficient to make the monthly payments provided for in full, then I direct that after the payment of the sum of $175.00 per month to Charlotte S.. Brown and her children, the remaining monthly payments shall be proportionately reduced to such extent as may be necessary.
I direct the trust hereby created shall extend for; a period of twenty years from and after my death and no longer.
Third: I hereby give and grant unto my said Trustee' full power and authority in connection with the management and control of the above described real estate^ including the power to lease the same on such terms; and conditions as to it may seem most advantageous.
In the event said premises are not leased or in the-event the lease thereon should expire before the expiration of twenty years from and after my death I authorize my said Trustee to lease said premises either' after my death or after the expiration of any lease thereon upon such terms and conditions as it may deem most advantageous, but in no event shall said lease-extend beyond a period of twenty years after my death.
Fourth: Upon the termination of the trust herein-created I direct my Trustee to sell said property at the most advantageous price and as soon after the expiration of said period as shall in their absolute judgment be wise and to execute such instrument or instruments as may be necessary to transfer a good' fee simple title.
After the payment of its commission and the fees; and expenses incident to such sale I direct the net proceeds shall be disposed of as follows:
The sum of Fifty-five Thousand Dollars ($55,000.00)-shall be paid to Mrs. Charlottes S. Brown, of Louisville, Kentucky, if living, and if dead then to her issue per stirpes.
The sum of Ten Thousand Dollars ($10,000.00) each to Joan Brown and Diane Brown, daughters of' said Charlotte S. Brown.
The sum of Twenty-five Thousand Dollars ($25,~ 000.00) to my nephew Elmer S. Justh, if living, and' if dead then to his widow and children in equal shares and to the survivors or survivor of them, the issue of any deceased child to take the share, to which said child would have been entitled if living, per stirpes.
*497 The sum of Twenty-five Thousand Dollars ($25,-000.00) to Jeanette Justh, wife of my nephew Elmer S. Justh, if living, and if dead then to her children in equal shares and to the survivors or survivor of them, the issue of any deceased child to take the share to which said child would have been entitled if living, per stirpes.
The sum of Five Thousand Dollars ($5,000.00) each to the children of said Elmer S. Justh, the issue of any of them who may then be deceased to take the share to which the deceased child would have been entitled if living, per stirpes.
The sum of Seventy-five Thousand Dollars ($75,-000.00) to my niece, Lydia C. Nevitt, if living, and if dead then to her issue, per stirpes.
The sum of Ten Thousand Dollars ($10,000.00) to my niece, Adele Smith, if living.
The sum of Fifteen Thousand Dollars ($15,000.00) to my great nephew, Harold Justh, if living, and if dead then to his issue, per stirpes.
The sum of Fifteen Thousand Dollars ($15,000.00) to my niece by marriage, Gertrude Justh, if living.
The sum of Twenty Thousand Dollars ($20,000.00) to my half sister, Eosa Eisdon, if living.
The sum of Fifteen Thousand Dollars ($15,000.00) to my friend, Eose Addie Schaeffer, if living, and if dead to her issue, per stirpes.
The sum of Two Thousand Dollars ($2,000.00) to my friend, Shirley Bohn, if living.
Should any of the above beneficiaries be not living at the time of the termination of said trust, then the the bequests to such beneficiary shall lapse and become part of the remainder of said proceeds and be disposed of as hereinafter provided with respect thereto.
The remainder of said proceeds shall be divided by my said Trustee into four equal shares.
One of said equal shares shall be paid to the District of Columbia Chapter of the American Eed Cross.
Another of said equal shares shall be paid to the Salvation Army of the District of Columbia.
Another of said equal shares shall be paid to the Masonic and Eastern Star Home of the District of Columbia.
Another of said equal shares shall be paid to the District of Columbia Department of the American Legion. It is hoped that this bequest will be used if practicable for the assistance of the widows of ex-service men.
*498 In the event the net proceeds from the sale of said property shall be insufficient to pay the amount specifically set forth above to the individual beneficiaries, then I direct that said payments shall be proportionately reduced to such an extent as may be necessary.
Fifth: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I may die seized and possessed, I direct my Executor to convert into cash as soon after my death as may be advantageous. Out of the proceeds, or any cash, left by me, I direct the payment of the expenses of administration, debts and all other charges, such as estate, succession and inheritance taxes.
In the event said rest, residue and remainder shall be insufficient to pay such charges, then I authorize my said Trustee to borrow such sum as may be necessary to pay the same and to secure its repayment by a deed of trust or mortgage upon the real estate hereinbefore described and to repay the same as rapidly as possible from the net rents derived therefrom over and above the annuities hereinbefore set out.
In the event that during the period of this trust the net rents received from said property shall be more than sufficient to pay said annuities, plus the interest and curtails on said loan, I direct that such surplus shall be retained in the hands of my Trustee until the termination of the trust, or unless the annual rental should thereafter be insufficient to pay the annuities.
Should said annual rentals be insufficient to pay said annuities, then to such extent as said rents may be insufficient, said Trustee is directed to use any accumulated net rent's in its hands for the purpose of paying said annuities in full. .
. Lastly: I nominate, constitute and appoint The "Washington Loan and Trust Company, a banking corporation of the District of Columbia, to be Executor of this my last Will and Testament and direct that no bond or other undertaking be required of it in such capacity in any jurisdiction wherein it may be called upon to qualify.
In Witness Whereof I have hereunto set my hand and affixed my seal this 10th day of June, A.D. 1946.
/S/ Joseph S. Justs [Seal]
[Witness clause omitted.]
*499 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are'made a part of the judgment herein, the court concludes that as a matter of law plaintiff is not entitled to recover and the petition is therefore dismissed.

 The parties have filed supplemental memoranda briefs, evidently rather hurriedly prepared. The defendant filed a five-page typewritten brief citing only one case — Estate of Freund v. Commissioner, 303 F. 2d 30 (C.A. 2d 1962). That case does not dispose of the issue involved here. In view of the importance of the question I think it should be thoroughly briefed in detail by both sides.

 We quote the second paragraph of the PIfth section of the will:
“In the event said rest, residue and remainder shall be insufficient to pay-such charges, then I authorize my said Trustee to borrow such sum as may be necessary to pay the same and to secure its repayment by a deed of trust or mortgage upon the real estate hereinbefore described and to repay the same as rapidly as possible from the net rents derived therefrom over and above the annuities hereinbefore set out.”

 The codicil is not reproduced, since no issue in the case is concerned with at. The content of the codicil is set forth in finding 4(f),

 A second caveat suit, filed 1 year later, was withdrawn. * In the defense of the caveat proceedings, plaintiff incurred and on due authorization paid .expenses totaling $18,397.05, including $15,000 for attorney’s fees.

 The total value of the personal property was $22,434.36.

 The total value of the estate was $347,434.36, of which the real estate comprised 93.25 percent.

 Prior to decedent’s death, the rental was increased to $18,000 per year.

 Prior to the execution of the codicil of May 22, 1947, the amount had been $575 per month, or $6,900 per year.

 No deductions for contributions to charitable organizations were claimed in plaintiff’s returns.

 The claims for refund were founded on the contention that, in computing net income for the taxable years 1951 through 1960, plaintiff should have been allowed deductions for amounts permanently set aside for charitable purposes.

 The will provided: “Should any of the * * * beneficiaries be not living -at the time of the termination of said trust, then the bequests to such beneficiary shall lapse and become part of the remainder of said proceeds and be disposed of as hereinafter provided with respect thereto,” l.e., to the four charitable organizations.

 These organizations are: (1) the District of Columbia Chapter of the American Red Cross; (2) the Salvation Army of the District of Columbia; (3) the Masonic and Eastern Star Home of the District of Columbia; and (4) the District of Columbia Department of the American Legion.